IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

SETH W. SUMMERS,

       Plaintiff,

v.

THE CITY OF HUNTINGTON, WEST
VIRGINIA, a municipal corporation,
CARL EASTHAM, Fire Chief for the City of
Huntington,

       Defendants.

CIVIL ACTION NO. 3:14-cv-14145

## COMPLAINT

Plaintiff Seth W. Summers brings this action against the Defendants for discriminatory and/or retaliatory harassment and termination, for wage and hour violations, for violation of the due process provisions of the federal and West Virginia Constitutions, and other unlawful actions against the Plaintiff.

### PARTIES

1. Plaintiff Seth W. Summers ("Plaintiff") was at all times relevant herein, a resident of West Virginia, and an employee of the Defendant City of Huntington ("City" or "Huntington"), within the meaning of West Virginia Code § 5-11-3(e).

2. Defendant Huntington, a West Virginia Municipal Corporation, is a person within the meaning of West Virginia Code § 5-11-3(a) and is an employer within the meaning

of West Virginia Code § 5-11-3(d).

3.    Defendant Carl Eastham at all times relevant hereto is the Fire Chief for the City, an agent of the City, the supervisory agent in charge of the Huntington Fire Department and is a person within the meaning of West Virginia Code § 5-11-3(a).

## JURISDICTION AND VENUE

4.    Jurisdiction and venue of this action properly lie in the United States District Court for the Southern District of West Virginia, pursuant to 28 U.S.C. §§ 1331 and 1391(b), as the action arises in part under the laws of the United States, namely the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et. seq.,* and the due process clause of the Fourteenth Amendment to the United States Constitution, and it is the jurisdiction in which the Defendants are located, reside and transact business and in which Defendants' unlawful actions occurred.

## BACKGROUND

5.    On or about August 20, 2012, the City hired Plaintiff as a firefighter.

6.    At the time Plaintiff accepted employment with the City, and at all times since, the City of Huntington Fire Department Manual contained certain policies, comprising, in part, the terms and conditions of the employment. The aforesaid Manual prohibited certain behaviors and assured deterrence and investigation if the behaviors occurred, including, but not limited to the following:

  a.    "Personnel shall treat all other personnel and the public with courtesy, consideration and respect."

  b.    "Personnel shall refrain from the use of violent, abusive, profane, lewd, harassing or indecent language in giving orders of in any other

2

conversation while on duty."

c.   "Personnel shall not make false reports of gossip about any business of the Department, or personal character or conduct of any personnel to the discredit of detriment of that personnel or the Department."

d.   "Harassment or discrimination based on race, creed, color, religion, national origin, political affiliation, sex, sexual preference or any other human rights violation is cause for investigation and a violation of City policy and state and federal law.  All incidents of harassment or discrimination on-duty or taking place on City property shall be investigated in accordance with applicable state and federal laws."

e.   "Violence or threats of violence in the workplace is a violation of City Policy and state and federal law.  All incidents of violence or threats of violence while on duty or taking place on City property, shall be investigated in accordance with applicable state and federal laws.

f.   "Personnel, while on-duty or on city property, shall treat fellow personnel, and the public, with respect and common human dignity. All incidents of disrespect shall be investigated in accordance with City policy and state and federal law." (p. 36)

7.   Following his successful completion of seven weeks of training, Plaintiff was assigned to the Huntington Fire Department's "B" shift where he began work as a firefighter in October of 2013.

8.   On or about January 17, 2013, Plaintiff suffered an on-the-job injury, which kept him off work for several days.  As a result of such injury, Plaintiff applied for and

3

received Workers' Compensation.

9. On or about January 22, 2013, Plaintiff returned to work on light duty. He returned to work full time on February 27, 2013.

10. Beginning on or after February 27, 2013, Privates Larry Kishbaugh, Chad Hendricks, Steven Ross, and others, engaged in a pattern of harassing and unwelcome conduct toward Plaintiff, including but not limited to violent, abusive, profane, lewd, harassing and indecent language, conduct and threats.

11. This conduct included but was not limited to setting off firecrackers near Plaintiff's head, stealing Plaintiff's equipment and personal effects, and dousing his clothing and bed sheets with water, and/or freezing his wet sheets.

12. This conduct included ostracism, name-calling and explicit and cruel enticement to quit his job.

13. This conduct further included but was not limited to regularly and persistently calling Plaintiff "gay" and "vagina." It included suggesting to Plaintiff that he should talk openly about his sexuality, suggesting that he should meet with "other gay men," and mocking him and his perceived sensitivities to sexually explicit language.

14. This unwelcome harassment toward Plaintiff was severe and pervasive and materially and adversely affected the terms and conditions of his employment.

15. Some of this conduct endangered the physical well-being of Plaintiff and others and materially put at risk the fire safety mission of the Plaintiff and the Defendants.

16. Defendants and their supervisory agents knew of this conduct or if they did not know, were unaware through their own negligence or inadvertence, and failed to take reasonable action to end the harassment.

4

17.     Plaintiff was repeatedly required to come in and begin work prior to the start of his shift in order to prepare breakfast for members of "B" shift and perform other duties, was required to stay after his shift to wash dishes and perform other housekeeping duties, and was required to use his days off to shop for food in order to prepare meals for the other firefighters.

18.     Defendants made clear to Plaintiff in various ways that to complain about the above-described or any unwelcome or objectionable conduct would be to risk his job and his career as a fire fighter.

19.     As it became clear to Plaintiff that this harassing conduct would continue indefinitely, Plaintiff described the harassment and discrimination to Huntington Fire Captain Jan Rader, his instructor during his first seven weeks of training, in order to seek her advice. Captain Rader, in turn, reported the behavior to Plaintiff's supervisor, Captain Robert Ray.

20.     Upon information and belief, Captain Ray notified the Defendants, Privates Kishbaugh, Hendricks, Ross, and others that Plaintiff had complained of harassment and discrimination to Captain Rader.

21.     Defendants and their supervisory agents failed to instigate or to conduct a reasonable investigation of the harassment and discrimination toward the Plaintiff and failed and refused to take any reasonable steps to end the harassment and discrimination.

22.     Following the reporting of the harassment and discrimination to Captain Radar, Plaintiff's hostile work environment continued and intensified, with Plaintiff now also being subjected by Privates Kishbaugh, Hendricks, Ross, and others to regular and repeated retaliation for such reporting, which included, on a daily basis, violent, abusive, profane, lewd, harassing actions, and ostracism, as well as indecent language and sexual harassment.

23.     Defendants and their supervisory agents knew that the harassment of Plaintiff continued and intensified, or if they did not know, were unaware through their own negligence or inadvertence, and failed to take reasonable action to end the harassment.

24.     On or about June 20, 2013, while off duty, Plaintiff was severely injured attempting to provide emergency assistance to the victim of an attack. As he attempted to assist the victim, Plaintiff was stabbed three times in the stomach, which necessitated emergency hospitalization for eight days, three in intensive care, during which he underwent surgery to repair his stab wounds, resect his punctured colon and repair his kidney.

25.     Following surgery and hospitalization, despite his having lost considerable weight and muscle tone, Plaintiff's doctor released him to return to work on light duty on July 2, 2013.

26.     On or about July 10, 2013, while working on light duty, Plaintiff sustained an abscess in the area of the stabbing injury and was re-hospitalized for six additional days. Following this abscess, Plaintiff was off work for an additional period. Plaintiff returned to work as a full duty probationary fire fighter on August 19, 2013.

27.     Following his return to work on the B Shift after his stabbing, the harassment of Plaintiff described above continued and intensified.

28.     The harassment included flooding Plaintiff's sleeping area with water while electrical cords were present,

29.     Defendants and their supervisory agents knew of this harassment, or if they did not know, were unaware through their own negligence or inadvertence, and continued to fail and/or refuse to intervene to stop it.

30.     Defendants compelled Plaintiff to perform training, testing and other tasks

beyond that required of other probationary fire fighters and without reasonable consideration and accommodation of his temporarily weakened condition.

31.    Although the one-year anniversary of Plaintiff's employment with the Huntington Fire Department occurred on August 20, 2013, Defendants denied Plaintiff the year-end step raise and required him to sign a written agreement extending his probationary period to December 6, 2013.

32.    On or about August 21, 2013, Captain Ray gave Plaintiff a written evaluation that was false and grossly unfair.

33.    On or about August 26, 2010, Privates Kishbaugh, Hendricks, Ross, and others harassed, abused and made false reports to Captain Ray about Plaintiff in an attempt to further harass him.

34.    On or about August 26, 2013, Captain Ray gave Plaintiff a disciplinary write-up that was false and grossly unfair.

35.    On or about August 26, 2014, Captain Ray warned Plaintiff not to report or complain about the harassment and discrimination he had been experiencing.

36.    On or about August 28, 2013, Defendant Eastham denied a request that Plaintiff be transferred to another shift, which might have provided Plaintiff a more realistic "opportunity to succeed" as a fire fighter.

37.    On or about August 28, 2013, Defendants compelled Plaintiff to perform training, testing, and other tasks, including laps up and down a tower in full gear, beyond what other probationary fire fighters were required to perform and without reasonable consideration and accommodation of his temporarily weakened condition.

38.    On August 28, 2013, while doing the tasks directed, Plaintiff became ill and

7

was hospitalized. In reasonable fear of losing his job, Plaintiff returned to work that same day. Upon his return, Defendants compelled Plaintiff to complete the tasks that had caused him to become ill.

39.     On or about August 30, 2013, Defendant Ray gave Plaintiff a written evaluation that was false and grossly unfair.

40.     On September 13, 2013, as a result of heavy training that strained the area of his sutures and aggravated prior injuries, Plaintiff was rushed to the hospital.

41.     Doctors then put Plaintiff on light duty, with no heavy lifting, for two additional months, to end on November 17, 2013. As required by the doctors due to his medical condition, Plaintiff worked on light duty from September 16 until November 16, 2013.

42.     In November of 2013, prior to leaving light duty, Plaintiff formally requested transfer from "B" shift to another shift in an effort to avoid and/or minimize future harassment, discrimination, and retaliation against him. In the written request, Plaintiff explicitly reported to Chief Eastham that "B" shift "was a "hostile work environment."

43.     Defendants denied the transfer request.

44.     On November 17, 2013, Plaintiff returned to "B" shift prepared to resume work as a full-time fire fighter.

45.     Upon return to "B" shift, Plaintiff found that his locker had been vandalized, his personal effects stolen, and the locker inscribed with a sexual slur, furthering the harassment and discrimination he had suffered at the hands of "B" shift since his initial injury.

46.     Plaintiff reported the vandalism, theft, and hostile work environment to Captain Ray.

47.     Upon information and belief, Captain Ray failed to reasonably investigate or take any action to reasonably address the incident.

48.     Thereafter, Defendant Eastham agreed to meet with Plaintiff and representatives of the Fire Fighters' Union on November 19, 2013 to discuss the requested transfer.

49.     On November 19, 2013, at the meeting purportedly called to discuss the requested transfer of Plaintiff, Defendant Eastham gave Plaintiff a letter charging him "with various acts of insubordination, conduct unbecoming a firefighter, and substandard evaluations." *See* Exhibit A, attached hereto. The letter notified Plaintiff that the City "has chosen to not retain your services as a firefighter," and had placed him on administrative leave, "pending the outcome of a pre-disciplinary hearing."

50.     Rather than the promised "pre-disciplinary hearing," a hearing was held before the Huntington Fire Civil Service Commission on January 6 and 7, 2014. The City then terminated Plaintiff from his employment on or about January 8, 2014, without any written ruling from the Commission.

51.     Plaintiff successfully performed his duties as a probationary firefighter throughout his tenure with the Huntington Fire Department, subject to his light duty restrictions at various times, until he was placed on administrative leave and subsequently terminated.

## COUNT I

### Violation of Federal and State Wage and Hour Laws

52.     Plaintiff repeats and realleges the allegations set forth above, as if fully set forth herein.

53.     While serving on the "B" shift of the Huntington Fire Department, Plaintiff was continually required by the Defendants to come in early and to begin work prior to the start of his shift in order to prepare breakfast for members of "B" shift and to perform other duties, without compensation.

54.     Plaintiff was further required by the Defendants to stay after his shift to wash dishes and perform other housekeeping duties, without compensation.

55.     In addition, Plaintiff was required by the Defendants to use his days off to shop for food in order to prepare meals for the other firefighters, without compensation.

56.     Defendants' aforesaid actions in requiring Plaintiff and other employees to work hours in excess of his shift without compensation violated the provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*., the West Virginia Wage Payment and Collection Act, W.Va. Code § 21-5-1 *et seq.* and the West Virginia Minimum Wage and Maximum Hours Standards, W.Va. Code § 21-5C-1 *et seq.*

57.     As a direct and proximate result, Plaintiff suffered lost wages and benefits, as well as compensation he otherwise was entitled to pursuant to his employment with the City and pursuant to the provisions of the federal and state law.

58.     Defendants' actions entitle Plaintiff to an award of attorneys' fees.

## COUNT II

### Sexual Harassment

59.     Plaintiff repeats and realleges the allegations set forth above, as if fully set forth herein.

60.     The aforesaid actions of the Defendants constitute hostile work environment sexual harassment of the Plaintiff in violation of § 5-11-9 (1) of the West Virginia Human

Rights Act ("Human Rights Act").

61.    The aforesaid actions of the Defendants were severe, pervasive and unwelcome, and materially affected the terms and conditions of his employment.

62.    Defendants' actions constitute aiding and abetting sexual harassment in violation of § 5-11-9(7)(A) of the Human Rights Act.

63.    As a direct and proximate result of the Defendants' aforesaid actions, Plaintiff has suffered indignity, embarrassment, humiliation, annoyance and inconvenience and is entitled to damages in an amount to be determined by the jury

64.    Defendants' actions were willful, wanton, malicious and/or undertaken with reckless disregard and/or reckless indifference to the rights of the Plaintiff entitling Plaintiff to punitive damages, as permitted by law, in an amount to be determined by the jury.

65.    Defendants' actions entitle the Plaintiff to an award of attorneys' fees.

### COUNT III

### Sex Discrimination

66.    Plaintiff repeats and realleges the allegations set forth above, as if fully set forth herein.

67.    Defendants' aforesaid actions constitute sex discrimination against the Plaintiff in violation of § 5-11-9(1) and (4) of the Human Rights Act.

68.    Defendants' actions constitute aiding and abetting sex discrimination in violation of § 5-11-9(7) (A) of the Human Rights Act.

69.    As a direct and proximate result of Defendants' aforesaid actions, Plaintiff has suffered indignity, embarrassment, humiliation, annoyance, and inconvenience and is entitled to damages in an amount to be determined by the jury.

70.     Defendants' actions were willful, wanton, malicious and/or undertaken with reckless disregard and/or reckless indifference to the rights of Plaintiff entitling Plaintiff to punitive damages, as allowed by law, in an amount to be determined by the jury.

71.     Defendants' actions entitle Plaintiff to an award of attorneys' fees.

## COUNT IV

### Failure to Reasonably Accommodate

72.     Plaintiff repeats and realleges the allegations set forth above, as if fully set forth herein.

73.     At all times after June 20, 2013, Plaintiff was a person with a disability, within the meaning of The West Virginia Human Rights Commission's Rules Regarding Discrimination Against Individuals With Disabilities, 77 C.S.R. 1 § 2.1

74.     At all times after June 20, 2013, Defendants were aware of Plaintiff's need for reasonable accommodation, including but not limited to an opportunity to fully heal from the injury he suffered on June 20, 2013 prior to being fully tested and finally evaluated.

75.     Defendants refused and/or failed to accommodate Plaintiff by not allowing him to resume his training, testing, and evaluation in a manner consistent with his need to heal from his injury and by not allowing him to complete his probationary period.

76.     Defendants refused and/or failed to provide Plaintiff with reasonable accommodations in violation of § 5-11-9(1) and (4) of the Human Rights Act and The West Virginia Human Rights Commission's Rules Regarding Discrimination Against Individuals With Disabilities 77 C.S.R. 1 § 4.

77.     As a direct and proximate result of Defendants' aforesaid actions, Plaintiff was wrongfully terminated and has suffered and will continue to suffer, lost wages and benefits in

12

an amount to be proven at trial.

78.    As a direct and proximate result of Defendants' aforesaid actions, Plaintiff has suffered indignity, embarrassment, humiliation, annoyance and inconvenience and is entitled to damages in an amount to be determined by the jury.

79.    Defendants' actions entitle Plaintiff to an award of attorneys' fees.

## COUNT V

### Disability Discrimination and Harassment

80.    Plaintiff repeats and realleges the allegations set forth above, as if fully set forth herein.

81.    At all times after June 20, 2013, Plaintiff was a person with a disability, within the meaning of The West Virginia Human Rights Commission's Rules Regarding Discrimination Against Individuals With Disabilities, 77 C.S.R. 1 § 2.1

82.    Defendants' aforesaid actions constitute disability discrimination and harassment against the Plaintiff in violation of § 5-11-9 (1) and (4) of the Human Rights Act and The West Virginia Human Rights Commission's Rules Regarding Discrimination Against Individuals With Disabilities, 77 C.S.R. 1 §§ 4.1, 4.1.2, 4.1.3, 4.1.4, 4.1.8 and 1.1.9.

83.    Defendants' actions constitute aiding and abetting disability discrimination and harassment in violation of § 5-11-9(7)(A) of the Human Rights Act.

84.    As a direct and proximate result of Defendants' aforesaid actions, Plaintiff has suffered indignity, embarrassment, humiliation, and annoyance and inconvenience and is entitled to damages in an amount to be determined by the jury

85.    As a direct and proximate result of Defendants' aforesaid actions, Plaintiff was wrongfully terminated and has suffered and will continue to suffer, lost wages and benefits in